*11738*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------x

**TRANSBULK SHIPPING LLC**,

Plaintiff,

- against -

**M & F CHARTERING (PVT) LTD.**,

Defendant.

-----------------------------------------------------x

**Case No.** 07 CIV 11206
JUDGE BATTS

**VERIFIED COMPLAINT**

Plaintiff, **TRANSBULK SHIPPING LLC**, (hereinafter "**TRANSBULK**"), by its attorneys, **JUNGE & MELE, LLP**, complaining of the Defendant, **M & F CHARTERING (PVT) LTD.**, (hereinafter "**M & F CHARTERING**"), alleges the following upon information and belief:

**1.** This is a case of admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) and a maritime claim within the meaning of Rules 9(h) and 38(e) of the Federal Rules of Civil Procedure.

**2.** At all times relevant, Plaintiff, **TRANSBULK**, was a foreign business corporation with an office located in Dubai, U.A.E.

**3**. At all times relevant, Defendant, **M & F CHARTERING**, was a foreign business corporation, with an office located in Karachi, Pakistan.

**4.** Pursuant to a GENCON form voyage charter party dated at Karachi on April 19, 2006, the vessel, ***DUBAI GOLD*** (the "Vessel"), was chartered by Plaintiff, **TRANSBULK**, as managers on behalf of vessel owner ECSI Ltd., of Surrey, U.K., to

Defendant, **M & F CHARTERING**, for two voyages during April and May, 2006, for the carriage of 15,000 metric tons of bagged rice during each voyage, on terms and conditions as more fully set forth in said charter party, a true copy of which is annexed hereto as **Exhibit "1."**

    **5.**   Thereafter, Defendant employed said vessel in ocean commerce for the two voyages in question and accrued ocean freight, demurrage, and despatch charges due and owning to Plaintiff, as the vessel manager.

    **6**.  On July 15, 2006, after the conclusion of said charter party term, Plaintiff's agent, AST Enterprises Inc., of Dubai, U.A.E., issued a Final Freight Invoice to Defendant which demanded payment for a net amount due Plaintiff totaling $50,077.16, a true copy of which is annexed hereto as **Exhibit "2."**

    **7.**   During the next 17 months, following numerous demands by Plaintiff, Defendant has failed, ignored and refused to pay its just debt to Plaintiff for the net amount due as stated in said freight invoice.

    **8**.  Under clause 42 of Rider to said governing charter party between Plaintiff and Defendant, disputes between them are to be resolved in arbitration in London pursuant to English law, and this proceeding is brought in aid of said arbitration, both contemplated or pending.  In that arbitration Plaintiff expects to recover the amount of $75,000.00, calculated as follows: on the principal claim for unpaid ocean freight, demurrage, and despatch, with interest to date, for an amount of $60,000; and Plaintiff's legal and other costs in the London arbitration with Defendant of $15,000.00; as best as said damages can now be estimated.

**9.** Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but Defendant is believed to have or will have during the pendency of this action, assets within this District consisting of cash, funds, freight, hire, or credits including but not limited to electronic fund transfers in the hands of garnishees in this District, including but not limited to the following:

1. Bank of China
2. HSBC (USA) Bank
3. Bank of New York Mellon
4. Barclay's Bank
5. JPMorgan Chase Bank
6. Wachovia Bank
7. Bank of America, N.A.
8. American Express Bank
9. Citibank, N.A.
10. Standard Chartered Bank
11. UBS, A.G.
12. BNP Paribas

13 Calyon Bank

14. Bank of Commerce
15. Deutsche Bank

WHEREFORE, Plaintiff prays for the following relief:

**1.** That process in due form of law according to the practice of this Court be issued against Defendant and that Defendant be cited to appear and answer the allegations herein;

**2.** That, since Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all of the Defendant's tangible or intangible property or any other funds held by garnishees including but not limited to the aforementioned garnishees in the District which are due and owing or otherwise the property of Defendant up to the amount of $75,000.00, to secure Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in this Verified Complaint.

**3.** That such property attached pursuant to the Process of Maritime Attachment and Garnishment remain sequestered to serve as security for the payment of Plaintiff's claims as they may be embodied in any award issued out of arbitration in London.

**4.** That Plaintiff have Judgment against Defendant for any of its property attached in this District up to an amount of $75,000.00, and that said property be condemned to satisfy any such Judgment; and

   **5**. That Plaintiff have such other and further and different relief as may be just and proper, including judgment against Defendant, along with interest, costs and disbursements as allowable under law.

Dated in the City of New York on December 12, 2007

Respectfully submitted,

JUNGE & MELE, LLP
*Attorneys for Plaintiff*

/S/ PETER A. JUNGE

______________________

Peter A. Junge (PJ-0745)
29 Broadway
New York, NY 10006
(212) 269-0061

*11738 Verified Complaint.wpd*

VERIFICATION

PETER A. JUNGE declares as follows:

1. I am admitted to the bar of this Honorable Court and am a partner in the firm of Junge & Mele, LLP, attorneys for Plaintiff.

2. I have read the foregoing Complaint and I believe the contents thereof are true.

3. The reason this Verification is made by deponent and not by Plaintiff is that Plaintiff is a foreign corporation, no officers or directors of whom are within this jurisdiction.

4. The sources of my information and belief are documents provided to me and statements made to me by Plaintiff.

5. I declare under penalty of perjury that the foregoing is true and correct.

Dated in the City of New York on December 12, 2007

/S/ PETER A. JUNGE

________________________
Peter A. Junge

| 1. Shipbroker | RECOMMENDED THE BALTIC AND INTERNATIONAL MARITIME COUNCIL UNIFORM GENERAL CHARTER (AS REVISED 1922, 1976 and 1994) (To be used for trades for which no specially approved form is in force) CODE NAME: "GENCON" Part I |
|---|---|
| BULK SHIPPING AND TRADING (PVT) LTD 51, TIMBER POND, KEAMARI, KARACHI. | 2. Place and date |
| 3. Owners/Place of business (Cl. 1) ECSI LTD 40 BOX RIDGE AVENUE PURELY SURREY CL8 3AQ UK MANAGERS:TRANSBULK SHIPPING LLC DUBAI. | 4. Charterers/Place of business (Cl. 1) M AND F CHARTERING (PVT) LTD. 315, 3RD FLOOR GLASS TOWERS MAIN CLIFTON ROAD, NEAR PSO HOUSE, KARACHI. |
| 5. Vessel's name (Cl. 1) MV DUBAI GOLD | 6. GT/NT (Cl. 1) 16511/6510 |
| 7. DWT all told on summer load line in metric tons (abt.) (Cl. 1) 21,760 MT DWAT | 8. Present position (Cl. 1) TRADING |
| 9. Expected ready to load (abt.) (Cl. 1) 28 APRIL 2006 | |
| 10. Loading port or place (Cl. 1) 1/2 SB 1SP KARACHI | 11. Discharging port or place (Cl. 1) 1/2 SB 1SP UMME QASR IRAQ |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1) 15000 MT BAGGED RICE, AS SOLE CARGO IN APRIL 2006 DATES 15000 MT BAGGED RICE, AS SOLE CARGO IN MAY 2006 DATES | |
| 13. Freight rate (also state whether freight prepaid or payable on delivery) (Cl. 4) USD 33.50 PGMT FIOS FREE DAS UMME QASR DISCHARGE PORT | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4) SEE RIDER CL 37 |
| 15. State if vessel's cargo handling gear shall not be used (Cl. 5) SEE CL26 | 16. Laytime (if separate laytime for load. and disch. is agreed fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6) |
| 17. Shippers/Place of business (Cl. 6) TBA | (a) Laytime for loading SEE CL 19 |
| 18. Agents (loading) (Cl. 6) BULK SHIPPING & TRADING | (b) Laytime for discharging SEE CL 19 |
| 19. Agents (discharging) (Cl. 6) TBA | (c) Total laytime for loading and discharging NON REVERSIBLE |
| 20. Demurrage rate and manner payable (loading and discharging) (Cl. 7) USD 6000 PDPR/HDWTSBE | 21. Cancelling date (Cl. 9) 30 APRIL 2006 |
| | 22. General Average to be adjusted at (Cl. 12) SEE RIDER CL 40 |
| 23. Freight Tax (state if for the Owners' account (Cl. 13 (c)) SEE RIDER CL 29 | 24. Brokerage commission and to whom payable (Cl. 15) TOTAL 3.75% |
| 25. Law and Arbitration (state 19 (a), 19 (b) or 19 (c) of Cl. 19; if 19 (c) agreed also state Place of Arbitration) (if not filled in 19 (a) shall apply) (Cl. 19) SEE CL 42 | |
| (a) State maximum amount for small claims/shortened arbitration (Cl. 19) SEE CL 42 | 26. Additional clauses covering special provisions, if agreed CL 18-42 DEEMED AS PART OF THE CP |

Copyright, published by The Baltic and International Maritime Council (BIMCO), Copenhagen

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter Party which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| For [signature] [stamp: P.O. Box 20024, Dubai, U.A.E.] | |

C.23

Printed and sold by Witherby & Company Limited, 32/36 Aylesbury Street, London EC1R 0ET, Tel. No. 0171 251 5341 Fax No. 0171 251 1296 by authority of The Baltic and International Maritime Council, (BIMCO) Copenhagen

EXHIBIT "1"

PART II
"Gencon" Charter (As Revised 1922, 1976 and 1994)

*[Document is a scanned charter party form, largely illegible due to poor scan quality. Contains standard Gencon Charter Part II clauses including: Agency, Brokerage, General Strike Clause, War Risks ("Voywar 1993"), General Ice Clause, Law and Arbitration. Line numbers run from approximately 207 to 417 in two columns. A handwritten notation "SEE RIDER CL.35" appears near Clause 14, and "SEE GENCON C/P RIDER / BOX 20" appears near Clause 15. A stamp and signature appear at the bottom.]*

C.H-1

PART II

## "Gencon" Charter (As Revised 1922, 1976 and 1994)

SEE RIDER CL.35

**14. Agency**

~~In every case the Owners shall appoint their own Agent both at the port of loading and the port of discharge.~~

SEE GENCON CP PART I BOX 26

**15. Brokerage**

~~A brokerage commission at the rate stated in Box 24 on the freight, dead-freight and demurrage earned is due to the party mentioned in Box 24. In case of non-execution 1/3 of the brokerage on the estimated amount of freight to be paid by the party responsible for such non-execution to the Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be agreed.~~

**16. General Strike Clause**

(a) If there is a strike or lock-out affecting or preventing the actual loading of the cargo, or any part of it, when the Vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there, the Master or the Owners may ask the Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless the Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, the Owners shall have the option of cancelling this Charter Party. If part cargo has already been loaded, the Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.

(b) If there is a strike or lock-out affecting or preventing the actual discharging of the cargo on or after the Vessel's arrival at or off port of discharge and same has not been settled within 48 hours, the Charterers shall have the option of keeping the Vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging until the strike or lock-out terminates and thereafter full demurrage shall be payable until the completion of discharging, or of ordering the Vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such orders to be given within 48 hours after the Master or the Owners have given notice to the Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this Charter Party and of the Bill of Lading shall apply and the Vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance to the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

(c) Except for the obligations described above, neither the Charterers nor the Owners shall be responsible for the consequences of any strikes or lock-outs preventing or affecting the actual loading or discharging of the cargo.

**17. War Risks ("Voywar 1993")**

(1) *For the purpose of this Clause, the words:*

(a) The "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and

(b) "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all Vessels or imposed selectively against Vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

(2) If at any time before the Vessel commences loading, it appears that, in the reasonable judgement of the Master and/or the Owners, performance of the Contract of Carriage, or any part of it, may expose, or is likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks, the Owners may give notice to the Charterers cancelling this Contract of Carriage, or may refuse to perform such part of it as may expose, or may be likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks; provided always that if this Contract of Carriage provides that loading or discharging is to take place within a range of ports, and at the port or ports nominated by the Charterers the Vessel, her cargo, crew, or other persons onboard the Vessel may be exposed, or may be likely to be exposed, to War Risks, the Owners shall first require the Charterers to nominate any other safe port which lies within the range for loading or discharging, and may only cancel this Contract of Carriage if the Charterers shall not have nominated such safe port or ports within 48 hours of receipt of notice of such requirement.

(3) The Owners shall not be required to continue to load cargo for any voyage, or to sign Bills of Lading for any port or place, or to proceed or continue on any voyage, or on any part thereof, or to proceed through any canal or waterway, or to proceed to or remain at any port or place whatsoever, where it appears, either after the loading of the cargo commences, or at any stage of the voyage thereafter before the discharge of the cargo is completed, that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo (or any part thereof), crew or other persons on board the Vessel (or any one or more of them) may be, or are likely to be, exposed to War Risks. If it should so appear, the Owners may by notice request the Charterers to nominate a safe port for the discharge of the cargo or any part thereof, and if within 48 hours of the receipt of such notice, the Charterers shall not have nominated such a port, the Owners may discharge the cargo at any safe port of their choice (including the port of loading) in complete fulfilment of the Contract of Carriage. The Owners shall be entitled to recover from the Charterers the extra expenses of such discharge and, if the discharge takes place at any port other than the loading port, to receive the full freight as though the cargo had been carried to the discharging port and if the extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route, the Owners having a lien on the cargo for such expenses and freight.

(4) If at any stage of the voyage after the loading of the cargo commences, it appears that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo, crew or other persons on board the Vessel may be, or are likely to be, exposed to War Risks on any part of the route (including any canal or waterway) which is normally and customarily used in a voyage of the nature contracted for, and there is another longer route to the discharging port, the Owners shall give notice to the Charterers that this route will be taken. In this event the Owners shall be entitled, if the total extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route.

(5) The Vessel shall have liberty:-

(a) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery or in any way whatsoever which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government which so requires, or any body or group acting with the power to compel compliance with their orders or directions;

(b) to comply with the orders, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(c) to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(d) to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;

(e) to call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions;

(f) where cargo has not been loaded or has been discharged by the Owners under any provisions of this Clause, to load other cargo for the Owners' own benefit and carry it to any other port or ports whatsoever, whether backwards or forwards or in a contrary direction to the ordinary or customary route.

(6) If in compliance with any of the provisions of sub-clauses (2) to (5) of this Clause anything is done or not done, such shall not be deemed to be a deviation, but shall be considered as due fulfilment of the Contract of Carriage.

**18. General Ice Clause**

~~*Port of loading*~~

~~(a) In the event of the loading port being inaccessible by reason of ice when the Vessel is ready to proceed from her last port or at any time during the voyage or on the Vessel's arrival or in case frost sets in after the Vessel's arrival, the Master for fear of being frozen in is at liberty to leave without cargo, and this Charter Party shall be null and void.~~

~~(b) If during loading the Master, for fear of the Vessel being frozen in, deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to any other port or ports with option of completing cargo for the Owners' benefit for any port or ports including port of discharge. Any part cargo thus loaded under this Charter Party to be forwarded to destination at the Vessel's expense but against payment of freight, provided that no extra expenses be thereby caused to the Charterers, freight being paid on quantity delivered (in proportion if lumpsum), all other conditions as per this Charter Party.~~

~~(c) In case of more than one loading port, and if one or more of the ports are closed by ice, the Master or the Owners to be at liberty either to load the part cargo at the open port and fill up elsewhere for their own account as under section (b) or to declare the Charter Party null and void unless the Charterers agree to load full cargo at the open port.~~

~~*Port of discharge*~~

~~(a) Should ice prevent the Vessel from reaching port of discharge the Charterers shall have the option of keeping the Vessel waiting until the re-opening of navigation and paying demurrage or of ordering the Vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice. Such orders to be given within 48 hours after the Master or the Owners have given notice to the Charterers of the impossibility of reaching port of destination.~~

~~(b) If during discharging the Master for fear of the Vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest accessible port where she can safely discharge.~~

~~(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and the Vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.~~

**19. Law and Arbitration**

* (a) This Charter Party shall be governed by and construed in accordance with English law and any dispute arising out of this Charter Party shall be referred to arbitration in London in accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or re-enactment thereof for the time being in force. Unless the parties agree upon a sole arbitrator, one arbitrator shall be appointed by each party and the arbitrators so appointed shall appoint a third arbitrator, the decision of the three-man tribunal thus constituted or any two of them, shall be final. On the receipt by one party of the nomination in writing of the other party's arbitrator, that party shall appoint their arbitrator within fourteen days, failing which the decision of the single arbitrator appointed shall be final.

For disputes where the total amount claimed by either party does not exceed the amount stated in Box 25** the arbitration shall be conducted in accordance with the Small Claims Procedure of the London Maritime Arbitrators Association.

* (b) This Charter Party shall be governed by and construed in accordance with Title 9 of the United States Code and the Maritime Law of the United States and should any dispute arise out of this Charter Party, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for purpose of enforcing any award, this agreement may be made a rule of the Court. The proceedings shall be conducted in accordance with the rules of the Society of Maritime Arbitrators, Inc.

For disputes where the total amount claimed by either party does not exceed the amount stated in Box 25** the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators, Inc.

* (c) Any dispute arising out of this Charter Party shall be referred to arbitration at the place indicated in Box 25, subject to the procedures applicable there. The laws of the place indicated in Box 25 shall govern this Charter Party.

(d) If Box 25 in Part I is not filled in, sub-clause (a) of this Clause shall apply.

* *(a), (b) and (c) are alternatives; indicate alternative agreed in Box 25.*

** *Where no figure is supplied in Box 25 in Part I, this provision only shall be void but the other provisions of this Clause shall have full force and remain in effect.*

Printed and sold by Witherby & Co. Ltd., 32-36 Aylesbury Street, London EC1R 0ET, Tel No. 0171 251 5341 Fax No. 0171 251 1296 by authority of The Baltic and International Maritime Council (BIMCO), Copenhagen.

[signature] [stamp: ... bulk shipping (L.L.C.)]

## PART II
## "Gencon" Charter (As Revised 1922, 1976 and 1994)

1. It is agreed between the party mentioned in Box 3 as the Owners of the Vessel named in Box 5, of the GT/NT indicated in Box 6 and carrying about the number of metric tons of deadweight capacity all told on summer loadline stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter Party about the date indicated in Box 9, and the party mentioned as the Charterers in Box 4 that:

The said Vessel shall, as soon as her prior commitments have been completed, proceed to the loading port(s) or place(s) stated in Box 10 [illegible] always afloat, and there load a full and complete cargo [illegible] as stated in Box 12, which the Charterers bind themselves to ship, and being so loaded the Vessel shall proceed to the discharging port(s) or place(s) stated in Box 11 as ordered on signing Bills of Lading, or so near thereto as she may safely get and lie always afloat, and there deliver the cargo.

2. **Owners' Responsibility Clause**
The Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by personal want of due diligence on the part of the Owners or their Manager to make the Vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied, or by the personal act or default of the Owners or their Manager.
And the Owners are not responsible for loss, damage or delay arising from any other cause whatsoever, even from the neglect or default of the Master or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this Clause, be responsible, or from unseaworthiness of the Vessel on loading or commencement of the voyage or at any time whatsoever.

3. **Deviation Clause**
The Vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist Vessels in all situations, and also to deviate for the purpose of saving life and/or property.

4. **Payment of Freight** SEE RIDER CL. 37
[illegible]

5. **Loading/Discharging** SEE RIDER CL 19
(a) Costs/Risks
[illegible]
(b) Cargo Handling Gear
[illegible]
(c) Stevedore Damage
[illegible]

6. **Laytime** SEE RIDER CL 22
(a) Separate laytime for loading and discharging
[illegible]
(b) Total laytime for loading and discharging
[illegible]
(c) Commencement of laytime (loading and discharging)
[illegible]

7. **Demurrage** SEE RIDER CL 20
[illegible]

8. **Lien Clause**
The Owners shall have a lien on the cargo and on all sub-freights payable in respect of the cargo, for freight, deadfreight, demurrage, claims for damages and for all other amounts due under this Charter Party including costs of recovering same.

9. **Cancelling Clause**
(a) Should the Vessel not be ready to load (whether in berth or not) on the cancelling date indicated in Box 21, the Charterers shall have the option of cancelling this Charter Party.
(b) Should the Owners anticipate that, despite the exercise of due diligence, the Vessel will not be ready to load by the cancelling date, they shall notify the Charterers thereof without delay stating the expected date of the Vessel's readiness to load and asking whether the Charterers will exercise their option of cancelling the Charter Party, or agree to a new cancelling date.
Such option must be declared by the Charterers within 48 running hours after the receipt of the Owners' notice. If the Charterers do not exercise their option of cancelling, then this Charter Party shall be deemed to be amended such that the seventh day after the new readiness date stated in the Owners' notification to the Charterers shall be the new cancelling date.
The provisions of sub-clause (b) of this Clause shall operate only once, and in case of the Vessel's further delay, the Charterers shall have the option of cancelling the Charter Party as per sub-clause (a) of this Clause.

10. **Bills of Lading** SEE RIDER CL 37
[illegible]

11. **Both-to-Blame Collision Clause**
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Owners in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Owners against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Owners.
The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

12. **General Average and New Jason Clause**
General Average shall be adjusted in London unless otherwise agreed in Box 22 according to York-Antwerp Rules 1994 and any subsequent modification thereof. Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see Clause 2).
If General Average is to be adjusted in accordance with the law and practice of the United States of America, the following Clause shall apply: "In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Owners are not responsible, by statute, contract or otherwise, the cargo shippers, consignees or the owners of the cargo shall contribute with the Owners in General Average in the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Owners, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Owners, or their agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the goods to the Owners before delivery."

13. **Taxes and Dues Clause**
(a) On Vessel -The Owners shall pay all dues, charges and taxes customarily levied on the Vessel, howsoever the amount thereof may be assessed.
(b) On cargo -The Charterers shall pay all dues, charges, duties and taxes customarily levied on the cargo, howsoever the amount thereof may be assessed.

**RIDER CLAUSES FOR MV. DUBAI GOLD, CHARTER PARTY DATED 19TH APRIL, 2006 KARACHI**

Clause 18

Vessel's description:

**VESSEL PARTICULARS**

- M.V. DUBAI GOLD (EX. STELINA K)
- MULTIPURPOSE – GEN CARGO TWEEN DECKER / ICE CLASS HIGHEST / LAKES FITTED / BOX TYPE HOLDS WITH CENTER LINE BULK HEAD 4/8 II/II
- IMO NO: 7906954
- FLAG / CLASS : ST. VINCENT / GERMANISHER LLOYD
- BUILT : VEB MATHIAS THIESEN WERFT,
- KEEL LAID/DELIVERY : 30.10.81 / 01.06.82
- 21,760 DWAT ON 10.11M SSW
- GRT/NRT : 16,511 / 6,510
- LOA/BEAM / MLD.DEPTH/LBP: 178.00M / 23.00M / 14.00M / 167.40M
- GEAR : 6X25 TONS ELECTRIC CRANES COMBINABLE TO 48 TONS GROSS OVER ALL HATCHES. MAXIMUM OUTREACH OF GEAR : 24M. NOT WORKING AND VSL TREATED AS GEARLESS – OWNERS TO PROVIDE MIN 2 SHORE CRANES ON THEIR EXPENSE BOTH ENDS
- REGISTERED OWNERS: M/S. POLARIS SHIPPING LTD., ST. VINCENT & THE GRENADINES.

- **GRAIN / BALE CAPACITIES PER HOLD IN CUFT:**

| | | |
|---|---|---|
| - HOLD NR1 | 146,558 | 140,730 |
| - HOLD NR2 | 245,085 | 240,082 |
| - HOLD NR3 | 246,145 | 241,201 |
| - HOLD NR4 | 246,569 | 241,554 |
| TOTAL | 884,357 | 863,567 |

- **HATCH COVERS:**

WEATHER DECK 4 HO / 8 HA STEEL HATCH COVERS FOLDING TYPE. TWEENDECK 4 HO / 6 HA STEEL FOLDING TYPE FULLY RETRACTABLE HYDRAULIC OPERATED. FROM EACH TWEEN DECK, 2 PANTOONS THE (CENTRE ONES) NEEDS TO BE PLACED ASHORE DURING CARGO OPERATIONS.

**SIZE (METERS) :** **HATCH** **TWEENDECK**



**RIDER CLAUSES FOR MV. DUBAI GOLD, CHARTER PARTY DATED 19TH APRIL, 2006 KARACHI**

| | | |
|---|---|---|
| NO1 P-S | 2 x (17.75x8.10-5.70) | -- |
| NO2 P-S | 2 x (25.60x8.10) | 2 x (25.60x8.10) |
| NO3 P+S | 2 x (25.60x8.10) | 2 x (25.60x8.10) |
| NO4 P-S | 2 x (25.60x8.10) | 2 x (25.60x8.10) |

- **HOLD DIMENSION / FLAT T-TOP DIMENSION**

| | hold dimentions | | flat tank top dimen ions | |
|---|---|---|---|---|
| | length | width fore/aft | length | width fore/aft |
| hld 1 | 27.60 | 12.50 / 19.20 | 27.50 | 4.70 / 19.20 |
| hld 2 | 26.20 | 19.20 | 26.20 | 19.20 |
| hld 3 | 26.20 | 19.20 | 26.20 | 19.20 |
| hld 4 | 26.20 | 19.20 | 26.20 | 19.20 / 17.80 |

| | Tweendeck floor dimentions | | heights in metres | | |
|---|---|---|---|---|---|
| | length | width | t.top to w.deck | t.top t.deck | t.deck to w.deck |
| hold 1 | no tween deck | | 9.00 | -- | -- |
| hold 2 | 26.20 | 8.50x2 | 12.50 | 8.60 | 3.90 |
| hold 3 | 26.20 | 8.50x2 | 12.50 | 8.60 | 3.90 |
| hold 4 | 26.20 | 8.50x2 | 12.50 | 8.60 | 3.90 |

- **TANK TOP STRENGTH:**
NO. 1, 2, 3, 4: 8.79 / 25.00 / 25.00 / 25.00 MT/M2
TWEENDECK (2, 3, 4) 3.50 MT/M2
WEATHER DECK AND HATCH COVERS: 1.75 MT/M2

- **SPEED / CONSUMPTION :**
ABT 13.0 KNOTS ON ABT 26 TNS IFO 180 CST PLUS 3 TNS MDO
ABT 14.0 KNOTS ON ABT 28 TNS IFO 180 CST PLUS 3 TNS MDO
ABT 15.0 KNOTS ON ABT 31 TNS IFO 180 CST PLUS 3 TNS MDO
ABT 16.0 KNOTS ON ABT 37 TNS IFO 180 CST PLUS 3 TNS MDO
PORT CONS GEAR WORKING/IDLE 4/2.5 TNS MDO
WHEN VSL MANEUVERING OR IN/OUT PORTS OR NAVIGATING IN CONFINED WATERS / CROSSING CANALS, RIVERS, STRAITS THEN VSLS MAIN ENGINE IS BURNING MDO. SPEED / CONSUMPTION IS BASED ON FAIR WEATHER. BF 4 AND SEA CONDITION MAXIMUM DOUGLAS SEA STATE 3.

- **TANK CAPACITIES :**
FW - 210 M3 (INCL 100.2 DRINKING WATER) / IFO – 1786 M3 / MDO – 365.1 M3

**RIDER CLAUSES FOR MV. DUBAI GOLD, CHARTER PARTY DATED 19TH APRIL, 2006 KARACHI**
ALL DTLS ABT AND WOG

Clause 19

(a) the cargo to be loaded and stowed free of expenses, risks and liability to the vessel at the rate of 1,000 metric tons per weather working day of 24 consecutive hours Sundays and Holidays excluded even if used. (SHEX EIU)
Time from Saturday noon until 08:00 hrs the following Monday or from noon preceding any local/legal Holiday until 08:00 hrs the next working day not to count even if used.

(b) The cargo to be discharged at the rate of 1,000 metric tons per weather working day of 24 consecutive hours Fridays and Holidays excluded even if used. (FHEX EIU)
Time from Thursday noon until 08:00 hrs the following Saturday or from noon preceding any local/legal Holiday until 08:00 hrs the next working day not to count even if used.

Clause 20
(a) At load and discharge ports Charterers shall pay demurrage, if incurred, at the rate as shown in box 18 per day pro rata for any part of a day, for all time used in excess of the time allowed, based on the principle "Once on demurrage, always on demurrage". Owners to pay dispatch at half the demurrage rate on all working time saved both ends. Charterers to ensure the Lab tests/analysis of the cargo at Umme qasr is carried out promptly withot delays and lay time during this is to count.
Clause 21
(a) At loading port vessel to present with all holds clean, dry, free of odor and free of dead or alive insects and in very respect fit and ready to load the cargo. If required, preloading fumigation will be for Owners' account and time will count as lay time. If ship's crew want to go ashore then accommodation to be on Owners' account. Owners to ensure that once cargo fumigated, hatches will be properly battened/sealed for the voyage at Owners' account and time. Fumigation after completion of loading on Charterers' account and time to count.

(b) Vessel's Master to undertake by written statements that the Vessels' holds/hatches will remain closed (afloat) in accordance with fumigation / Superintendent Company, instructions/warnings. Vessel to do-gas at sea in accordance with Pre shipment Inspection Company instruction. weather permitting.

(c) Certificate will also be issue by Fumigation Company confirming details of fumigation to be countersigned by the Master / Chief Officer.

Clause 22



**RIDER CLAUSES FOR MV. DUBAI GOLD, CHARTER PARTY DATED 19TH APRIL, 2006 KARACHI**

(a) Master to tender upon arrival, at ports, written N.O.R via cable/radio/telex during local normal working office hours only (Mon-Fri 09:00hrs – 17:00 hrs and Sat 09:00 hrs – 12:00 non) whether in port or not, whether in berth or not, whether in free pratique or not, wherher customs cleared or not. (WWWW)

(b) Laytime at load / discharge port shall commence at 14:00 hrs same day if n.o.r. is tendered at/or before noon and at 08:00 hrs next working day if n.o.r. tendered afternoon.

(c) Any time used before commencement of laytime not to count.

Clause 23
At load port, vessel's holds to be inspected by Shippers' / Charterers' surveyor. Upon tendering N.O.R., vessel's holds to be clean/dry/swept/free of any residue of previous cargo and is ready in all respect to load Charterers' intended cargo. In case vessel failed on hold inspection, then all time / costs to be for Owners' account and time not to count as laytime until she passes same. Time used, if any, from tendering not ce upto inspection to count as laytime.

Clause 24
Opening and closing of the hatches shall be performed by Vessel's crew at both loading and discharging ports. First opening and last closing of the hatches, in each port, not to count as laytime.

Clause 25
Shifting from anchorage to first loading berth is for Owners' account and time. In case a second berth is required at load port then shifting expenses will be for owners account and time will count.

Clause 26
Vessel to supply steam, electric or electric hydraulic winches and motive power for driving all winches and gears, all necessary falls, slings and runners (as on board) free of expense to the Charterer. Charterers to have free use of vessel's lighting for night work, if required. Shore winchmen and shore cranes (if required) above vessel's declared gear lifting capacity (as described in clause) at load port to be for Charterer's/Shippers' account.
In case Vessel's gear un operable then Owners to hire/provide shore mobile cranes on their expense at Load/Disch ports.
Clause 27

Ship side tally to be for Owners' account and shore side tally to be for Charterers.

**RIDER CLAUSES FOR MV. DUBAI GOLD, CHARTER PARTY DATED 19TH APRIL, 2006 KARACHI**

At load port, cargo to be tailed / surveyed by Owners' P&I surveyors and after loading completed all holds/hatches to be sealed by P&I surveyors and to be unsealed at discharging port under supervision of Owners' P&I surveyors, receivers and stevedores

Clause 28
Overtime to be for the party ordering same. If ordered by port authority or any other official entitled body, overtime to be for Charterers'/Shippers'/Receivers' account. Crew and officers overtime to be always for Owners' account.

Clause 29
Any taxes/wharfage and/or dues on freight/Vessel/flag to be for Owners' account same on cargo for Charterers' account.
Oap. if any, to be for Charterers' account. Vessel is to be free of Disb costs at Umme qasr which is account Charterers/Recievers.

Clause 30
No cargo to be loaded in deep tanks, wing tanks or other inaccessible spaces. The Master to have the liberty of loading in such spaces for the purpose of stability of the Vessels but any extra expenses incurred as well as the corresponding to be for Owners' account.

Clause 31
At load port Stevedores, although appointed and paid by Charterers/Shippers shall always be under the direction and control of the Master. If Stevedores fail to comply with Master's instructions, Master shall immediately report the matter in writing to Shippers / Receivers requesting the necessary corrections prior Vessel's sailing. At loading port Shippers / Receivers are prohibited to use hooks. For discharge port Charterers will request Receivers to take extra precautions in case Stevedores do not comply with these conditions. Loading or discharging will be stopped and all time will be in Charterers' account.

Clause 32
Stevedores damages, if any to be settled between Stevedores and Owners, with Charterers to assist Owners.

Clause 33
Kraft paper for proper stowage or separation, max USD 3,000, to be for Owners' account. If costs are higher then balance of costs to be for Charterers' account.
Time for laying to count as laytime.

Clause 34



**RIDER CLAUSES FOR MV. DUBAI GOLD, CHARTER PARTY DATED 19TH APRIL, 2006 KARACHI**

Charterers/Shippers to provide, free of expenses to the vessel/Owners. two (2) percent empty bags free of freight, for eventual re-bagging at discharging port. Cargo sweeping, and re-bagging, if any to be done by Receives on their time and expenses.

Clause 35
Owners to appoint Agents both ends but to be nominated by Charterers. Owners paying customary agency fee and port D/A both ends.
Subject fair D/A's.
Bulk Shipping to be load port Agents.

Clause 36
Owners/master shall give 7/5/4/3/2 days approx notices and 24 hours definite notice of arrival at load port to agents who will, in turn, advise the competent, interested parties.

Whilst at sea Owners to advise Charterers every two days present position/course/speed and ETA next bunkering/discharge port.

Clause 37
(a) 98% Freight (less commission/brokerage) payable to Owners within 4 banking days after completion of loading / signing and releasing of required number of clean Bills of Lading marked "Freight payable as per C/P". But always before breaking bulk. Any time lost in waiting for freight at disport to be for Charterers account and time to be counted as lay time or time on demurrage
Balance 2% together with settlement of demurrage / dispatch to be paid within 15 days after completion of discharging and upon submission of SOF/Time Sheet / etc duly signed/stamped by concerned parties.

(b) Full freight deemed earned upon shipment, discount less and non-refundable. Vessel and/or cargo lost or not lost.

(c) Charterers to deduct from freight commission, brokerage, freigh. tax (if applicable)

(d) Owners nominated bank:

HABIB BANK AG ZURICH,
CORPORATE BRANCH
P.O.BOX 1622, DUBAI, U.A.E.

BENEFICIARY : TRANS BULK SHIPPING L.L.C.
USD. ACCOUNT NO: 020102-20430-333-239622
SWIFT : HBZUAEAD

CORRESPONDING BANK : BANK OF NEWYORK,NEWYORK

**RIDER CLAUSES FOR MV. DUBAI GOLD, CHARTER PARTY DATED 19TH APRIL, 2006 KARACHI**

SWIFT : IRVTUS3N
ACCOUNT NO.8033380748, OF HABIB BANK AG ZURICH

(e) Clean Mate's Receipt to be signed for each parcel of rice when on board. Master having the right to refuse cargo which is not "clean" and master or Charterers' Agents on his authority to sign "Clean" bills of Lading in accordance therewith according to Mate's Receipt. F.I.O.S. Bill of Lading to be issued Claused "Freight Payable as per C/P" but once freight has been received in Owners' account Owners agree for Bill(s) of lading to be marked "Freight Paid" or "Freight Prepaid"
All Bills of Lading drafts to be sent to Owners for approval before releasing.

(f) At discharge port, discharging and delivery of cargo to be allowed only against representation of original Bills of Lading. In case original Bills of Lading not available prior Vessel's arrival at discharging port, Owners/Master guarantee/agree to discharge the entire cargo against Charterers simple Letter of Indemnity wording of which as per Owners P&I format and signed by Charterers.

(g) Owners not responsible for cargo quantity. Gross or Nett, which to be mentioned in Bills of Lading as said to weight by Shippers. Owners are only responsible for the number of bags loaded (shipped) on board.

Clause 38
Vessel to be fully P&I covered by West of England PNI club.

Clause 39
Second shipment of 15000 mt bagged rice is subjective to mutual agreement by owners and chrts and reconfirmation by charts with in 24 hours of ows advising eta of vsl at khi.

Clause 40
Chamber of Shipping war Risk Clause 1 & 2, General Average and New Jason Clause, Both to Blame Collision Clause. Paramount Clause and P & I Bunkering Clause are deemed incorporation and form port of this Charter Party and to be inserted in all Bills of Lading issued hereunder.

Clause 41
Owners guarantee that the Vessel is classed as a general cargo ship (Owners to fax relevant certificate) and Vessel to comply with ISM Code. Vessel to also be compliant under latest ISPS Code (if applicable, from the 1st of July 2004).

Ebadi

**RIDER CLAUSES FOR MV. DUBAI GOLD, CHARTER PARTY DATED 19TH APRIL, 2006 KARACHI**

Clause 42
All dispute arising out of this contract which cannot amicably resolved shall be referred to arbitration in London. Unless the parties agree upon a sole Arbitrator, the reference shall be on final arbitratement of two Arbitrators who shall be members of the London Maritime Arbitrator' Association or otherwise qualified by experience to deal with commercial shipping disputes.

Should the two Arbitrators unable to agree the matter is to be referred to an umpire who is to be appointed jointly by the Arbitrators and his opinion is to be final and binding for both parties.

The contract is governed by English Law and there shall apply to Arbitrators proceeding under this clause terms of the London Maritime Arbitrators' Association current at the time when arbitration proceedings are commenced.

For disputes where the total amount claimed by either party does not exceed USD 25,000 the arbitration shall be conducted in accordance with the small claims proceed of the London Maritime Arbitrators Association.

Any claim must be made in writing and claimant's arbitrator appointed within twelve month of Charter Party date and where this provision is not complied the claim shall be waived and absolutely barred.

Clause 43
All terms and conditions of this Charter Party, including freight, to be treated strictly confidential and not to be disclosed to any third party.

For OWNERS CHARTERERS

# AST ENTERPRISES INC

Regd Off: NE 3/25/13
SAIF ZONE.
SHARJAH.
E mail: astent@emirates.net.ae

P.O.Box 20524,
DUBAI.
Fax : 04-3316425

*Date : 15/07/06*

*Inv No: 15/07/06/D.GOLD – VO1*

**FINAL FREIGHT INVOICE**

*M/S M & F CHARTERING PVT LTD.*
*KARACHI - PAKISTAN*

*M.V. DUBAI GOLD C/P DTD19/04/2006 KARACHI - UMMQASSR*

GROSS QTY LOADED : 15,000.00 MT X 33.50 USD PMT FIOS = 502,500.00 USD

2% BALANCE FREIGHT DUE = 10,050.00 USD
ADD : DISPORT DEMURRRAGE = 50,979.16 USD
LESS : LOADPORT DESPATCH = 10,952.00 USD

NET AMOUNT DUE 50,077.16 USD

(USD. FIFTY THOUSAND SEVENTY SEVEN & CENTS SIXTEEN ONLY.)

KINDLY REMIT THE AMOUNT TO THE FOLLOWING BANK ACCOUNT:

HABIB BANK AG ZURICH ,
CORPORATE BRANCH,
P.O.BOX 1622, DUBAI, U.A.E

BENEFICIARY : TRANS BULK SHIPPING L.L.C
USD.ACCOUNT NO : 020102-20430-333-239622
SWIFT : HBZUAEAD

CORRESPONDING BANK : BANK OF NEWYORK,NEWYORK
SWIFT : IRVTUS3N
ACCOUNT NO. 8033380748, OF HABIB BANK AG ZURICH

FOR AST ENTERPRISES INC.

AST ENTERPRISES INC

AUTHORIZED SIGNATORY.

EXHIBIT "2"